## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SUANNE RANKIN,<br><br>       *Plaintiff*,<br><br>  vs.<br><br>ALL WAYS SAFE LLC,<br><br>       *Defendant*. | )<br>)<br>)<br>)  **Case No.**  2:23-cv-1848<br>)<br>)<br>)<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Suanne Rankin, by and through the undersigned counsel, files the following Complaint in Civil Action against Defendant, All Ways Safe LLC, averring as follows:

## PARTIES

1.      Plaintiff, Suanne Rankin ("Plaintiff"), is an adult individual who resides at 403 National Pike East, Brownsville, Pennsylvania 15417.  At all times relevant, Plaintiff was a "qualified individual with a disability" within the purview of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 1201, *et seq.* (hereinafter, and collectively, the "ADA"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA) and the Rehabilitation Act of 1973, Pub. 29 U.S.C. § 701, *et seq.* (hereinafter, the "RA").

2.      The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).  42 U.S.C. § 12102.

3.      Plaintiff possesses a "disability" pursuant to 42 U.S.C. § 12102(A) as Plaintiff was diagnosed with an atrial septal defect immediately after she suffered from a stroke in December of 2019 (the "Condition").  At all times material, the Condition impaired Plaintiff's major life activities including Plaintiff's ability to care for herself, perform manual tasks, sleep, walk, stand, lift objects, and work.  The Condition also places Plaintiff at a heightened risk of another stroke. This heightened risk is to such an effect that Plaintiff may, on any given day, experience the onset of a stroke that would immobilize Plaintiff and require immediate emergency medical attention. Further, Plaintiff experiences chronic, intermittent symptoms of numbness and tingling in both her right and left hands and can spontaneously experience novel medical conditions associated with Plaintiff's cardiovascular system due to the far-reaching impacts of the Condition.

4.      Plaintiff further possesses a "disability" pursuant to the PHRA.  The PHRA defines a "disability" to include an "actual mental or physical impairment that substantially limits one or more major life activities." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 704 (E.D. Pa. 2015) quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266,274 (3d Cir. 2012).[1]

5.      At all times material, the Condition constituted an actual and physical impairment that limited Plaintiff's major life activities in countless ways.  As discussed above, the Condition was a medical abnormality in Plaintiff's cardiovascular system which both heightened Plaintiff's risk of a stroke, caused abnormal cardiovascular activity and symptoms, and correspondingly

---

[1] The Pennsylvania legislature has not revised the PHRA to address that Congress substantially broadened the definition of a "disability" to the "maximum extent permitted by the terms" of the ADA.  *Ostrowski v. Con-way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013).  These amendments became effective on January 1, 2009 and as such, the PHRA's definition of a "disability" differs from that provided by the ADA. *See McDonald v. Pa. State Police*, 532 F. App'x 176, 177 (3d Cir. 2013) and *Sowell*, 139 F. Supp. 3d 684 at 704 (E.D. Pa. 2015).  In all other respects, the ADA and the PHRA are interpreted consistently and utilize the same standards for determining liability. *Oden v. Se. Pa. Transp. Auth.*, 671 F. App'x 859, 863 (3d Cir. 2016) citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

impaired Plaintiff's engagement in major life activities which included, but were not limited to, Plaintiff's ability to care for herself, sleep, walk, stand, lift objects, and work.

6.      Defendant, All Ways Safe LLC ("Defendant"), is a limited liability company formed in the commonwealth of Pennsylvania that provides private traffic control and safety services.  Defendant delineates its "registered office" with the Pennsylvania Department of State as 159 South McDonald Street, McDonald, Pennsylvania 15057 and maintains its principal place of business located at 159 South McDonald Street, McDonald, Pennsylvania 15057 (hereinafter, the "Facility").

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the ADA and the RA (collectively, Plaintiff's claims arising under the ADA and the RA are identified as the "Federal Law Claims").

8.      Plaintiff is also advancing claims under the PHRA (the "State Law Claims").  This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.  Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

9.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.   Specifically, these events and omissions occurred within Washington County, Pennsylvania which is one of the counties encompassed by the Western District.  This matter is properly before the Pittsburgh division of the Western District given the conduct complained of herein arose in Washington County, Pennsylvania and conduct arising within Washington, County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.      This Court May Exercise Personal Jurisdiction Over Defendant as Defendant has Consented to Personal Jurisdiction of Pennsylvania's Courts and the Exercise of Personal Jurisdiction Complies with the Due Process Clause.**

10.      This Court may exercise personal jurisdiction over Defendant as: (1) Defendant has subjected itself to jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa. C.S. § 5301; and (2) this Court may exercise general jurisdiction over Defendant in compliance with the Due Process Clause of the United States Constitution.

11.      A federal district court may exercise personal jurisdiction over the parties "to the extent provided under the law of the state in which the court sits".  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 , 96 (3d Cir. 2004).  A federal court in Pennsylvania may exercise personal jurisdiction over the parties "to the extent Pennsylvania's long-arm statute permits".  *Nutt v. Best W. Int'l*, No. 3:16-CV-0002, 2016 BL 381653, at *3 (M.D. Pa. Nov. 16, 2016).

12.      Further, "'the Due Process Clause of the Fourteenth Amendment sets the outer boundaries of [Pennsylvania's] authority to proceed against a defendant.'"  *Plumbers Local Union*

4

*No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 BL 255436, at \*5 (E.D. Pa. July 24, 2017) citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).

13.     Pennsylvania's long-arm statute authorizes the personal jurisdiction to the "fullest extent under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. C.S. § 5322(b).

14.     Pennsylvania provides that personal jurisdiction over a defendant exists if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301.  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at \*5 (E.D. Pa. Mar. 29, 2019) citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 , 472 (1985) (citing that personal jurisdiction may be established by "express or implied consent") and *Bane v. Netlink, Inc.*, 925 F.2d 637 , 641 (3d Cir. 1991).

15.     Specifically, 42 Pa. C.S. § 5301 states "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person."  42 Pa. C.S. § 5301(a).  This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.--
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

16.     As discussed above, Defendant has incorporated itself as a limited liability company formed in the commonwealth of Pennsylvania.  Therefore, Defendant has consented to

the general jurisdiction of Pennsylvania's tribunals and may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a).

17.     The Due Process Clause of the Constitution gives rise to two types of personal jurisdiction: "general jurisdiction" or "specific jurisdiction".  *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255 (2017).

18.     The Supreme Court has held "the paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

19.     As stated above, Defendant is an incorporated entity within the commonwealth of Pennsylvania.  Further, Defendant maintains its principal place of business within Washington County, Pennsylvania.  Accordingly, this Court may exercise general jurisdiction over Defendant in compliance with the Due Process Clause of the Constitution.

**D.     Plaintiff has exhausted its administrative remedies and the Federal Law Claims and the State Law Claims are now properly able to be brought before this Court.**

20.     Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court.  Specifically:

      a.     On or about February 21, 2023, Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-223-01085 (the "EEOC Charge") and with the Pennsylvania Human Relations Commission (the "PHRC").

b. On July 26, 2023, the EEOC issued the Determination and Notice of Rights (the "DNR") wherein Plaintiff was afforded ninety days within which to timely file the Federal Law Claims and the State Law Claims. A true and correct copy of the DNR is attached hereto, made a part hereof, and identified as **Exhibit A**. The instant Complaint is filed within the ninety-day time period.

## GENERAL ALLEGATIONS

21.     On or about September 7, 2022, Plaintiff commenced her employment with Defendant as a construction site "Flagger" (hereinafter, the "Position"). Plaintiff was compensated on an hourly basis of approximately $13.00 per hour and Plaintiff's duties consisted primarily of directing traffic flow at construction sites to ensure driver safety; maintaining order at construction sites by enforcing safety regulations; communicating with drivers, pedestrians, and other workers to ensure safe operation of construction sites; marking work areas with flags, cones, or other devices to warn drivers of hazards or construction work ahead; and determining the best method for directing traffic in a safe manner.

22.     On numerous occasions throughout the course of Plaintiff's employment, starting specifically from Plaintiff's first day with Defendant, Plaintiff notified Defendant of the Condition and of its impact on Plaintiff's major life activities. Further, Plaintiff notified Defendant that she may require emergency medical treatment in the event the Condition manifested in a life-threatening manner (the "Accommodation"). Defendant acknowledged the Accommodation and the extent to which the Condition impaired Plaintiff.

23.     Throughout the course of her employment, and subsequent to the above, Plaintiff verbally and repeatedly reminded members of Defendant's management group, Robert Fisher ("Fisher") and a male individual nicknamed "Hondo" (proper name currently unknown) ("Hondo")

of the symptoms of her Condition and how it impacted Plaintiff's major life activities.  Further, Plaintiff would openly discuss the Condition with Defendant generally, with coworkers, and with Fisher and Hondo.

24.     On or about October 27, 2022, Plaintiff was experiencing a rare manifestation of the symptoms associated with the Condition in that she experienced numbness in the entirety of the left side of her body and specifically within her left arm, leg, and portions of her face.  Plaintiff was previously advised by her medical personnel that in such an event, Plaintiff was to immediately seek emergency medical treatment.

25.     Plaintiff then informed her coworkers," Brad" (last name unknown at this time) and "Gwenna" (last name unknown at this time) of the symptoms and of Plaintiff's need to leave for the day pursuant to the Accommodation.  Plaintiff then and subsequently departed the work site to seek emergency medical care at a local hospital.

26.     Immediately subsequent to the event set forth above, Plaintiff was transferred by ambulance to Allegheny General Hospital ("AGH") for clinical testing and monitoring.

27.     Plaintiff's condition quickly stabilized, and the various tests revealed no newly developed organic cause for Plaintiff's episode, however, Plaintiff remained overnight with AGH as a precautionary and conservative measure as well as to undergo further testing. As the above-referenced testing and monitoring revealed no newly developed organic cause for Plaintiff's condition, emergency medical personnel at AGH advised Plaintiff that they were admitting her to inpatient status in order for her to follow up with her treating cardiologist, hematologist, and neurologist.

28.     Between October 27, 2022, and October 29, 2022, AGH proceeded to examine Plaintiff, and subjected her to additional clinical testing.

8

29.     On or about October 30, 2022, Plaintiff was discharged from AGH and was advised she could return to work effective immediately and safely return to her duties with Defendant.

30.     On October 31, 2022, Plaintiff telephoned Defendant and formally notified them that she was medically released to return to work on November 1, 2022.

31.     Immediately subsequent to the telephone call set forth above, Plaintiff's mother, who was also an employee of Defendant, was instructed by her manager to contact Plaintiff and request that she telephone "Patsy" (last name unknown) ("Patsy"), Defendant's Human Resources' personnel, at her soonest convenience.

32.     Plaintiff then telephoned Patsy, wherein she requested to return to work effective immediately and informed Patsy that she was medically cleared by her treating physicians to safely resume her work duties.

33.     In response to the above, Patsy discriminatorily stated, "Well, don't get me wrong. You're a good employee but I can't have you back because you're a risk."  The context of Patsy's statements, and specifically the alleged "risk" to which Patsy referred to, is in clear reference to the Condition and the Accommodation.  Further, Patsy's comment clearly indicates a discriminatory and negatively charged animus directed towards Plaintiff because of the Condition.

34.     Defendant, by and through Patsy, then terminated Plaintiff's employment.  The termination clearly was directly related to the Condition and in clear violation of the mandates of the ADA, the RA, and the PHRA.

### COUNT I
### DISCRIMINATORY TERMINATION IN
### VIOLATION OF THE ADA AND THE PHRA
### 42 U.S.C. § 1201, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

35.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

36.    The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities.  42 U.S.C. § 12101.  Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a).

37.    To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by the employer; and (3) [s]he suffered an otherwise adverse employment decision as a result of discrimination.  See, *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.    Plaintiff is a "disabled person" pursuant to 42 U.S.C. § 12102 of the ADA.**

38.    As established herein, Plaintiff possessed a "disability" under the meaning of the ADA, and correspondingly "disabled" for purposes of establishing her *prima facie* case, given the numerous ways in which the Condition substantially impaired her major life activities.  Specifically, Plaintiff was subjected to a heightened risk of spontaneous, life-threatening medical events, experienced wide-ranging difficulties with her cardiovascular system, and often experienced new symptoms of the Condition that regularly ranged in severity that were triggered by the nature of the Condition itself.  Given the far-reaching impact of the Condition, Plaintiff's major life activities were substantially impaired both physically by the Condition and by the means in which Plaintiff was forced to adapt her major life activities to minimize the risk the Condition posed to these activities.

**B.     Plaintiff is a "qualified individual" pursuant to 42 U.S.C. § 12111 of the ADA and was qualified to perform the essential functions of her job with or without reasonable accommodations pursuant.**

39.     At all times material, Plaintiff was qualified to perform the essential functions of the Position.  The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To meet this definition, Plaintiff must show she possesses "the requisite skill, experience, education and other job-related requirements of the employment position" and that she "can perform the essential functions of the position with or without reasonable accommodations.  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

40.     Plaintiff possessed and exercised the skill, experience, and ability needed to perform the essential functions of the Position.  Specifically, Plaintiff was sufficiently skilled in the areas of comprehension, communication, interpretation, and analysis needed to direct traffic, interpret safety regulations, and communicate with coworkers and pedestrians to ensure the safe flow of travel through a designated work zone.

41.     Plaintiff required only one modification to the terms and conditions of her employment from Defendant – the Accommodation – which provided Plaintiff the ability to receive emergent and life-saving medical treatment in the event the Condition manifested in an extreme fashion.

42.     Further, during her employment, Plaintiff performed her assignments without a single issue or complaint levied against her concerning safety or performance.  In other words, Defendant ratified the fact that Plaintiff was qualified to perform the essential functions of the Position with the Accommodation.

11

**C.     Plaintiff suffered an "adverse employment action" as a result of discrimination.**

43.     On October 31, 2022, Plaintiff called Defendant, by and through its agent Patsy, and informed Defendant of her medical clearance and of her ability to return to the worksite.  At this time, Defendant informed Plaintiff that Plaintiff constituted an unacceptable "risk" and that Plaintiff's employment was terminated effective immediately.  Accordingly, the discriminatory animus present in Defendant's statements is clear and needs no elaboration.

44.     Further, a sustainable inference of discrimination arises given the close temporal proximity between a manifestation of the Condition, wherein Plaintiff required medical attention, and the termination.

**D.     Plaintiff is entitled to pursue punitive damages as Defendant discriminated against her with malice and reckless indifference to her federally protected rights.**

45.     A plaintiff may recover punitive damages where she can demonstrate a defendant, "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1).  The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination".  *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

46.     At all times material, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA.  In terminating Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

47.    As a direct and proximate result of Defendant's discriminatory conduct in violation of the ADA and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE ADA AND THE PHRA
## 42 U.S.C. § 1201, *et seq.*; 43 P.S. § 951, *et seq.*

48.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

49.    The ADA prohibits employers from retaliating against employees. 42 U.S.C. §12203(a).  Specifically, the ADA states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter."  *Id.*

50.    Notably, the case law has held that, in and of itself, retaliation is a separate and distinct unlawful practice of discrimination and, thus, is actionable in its own right and without regard to other instances of discrimination.  *See Mandel v. M & Q Packaging Corp.*,706 F.3d 157, 163-64 (3d Cir. 2013); see *Mercer*, 26 F. Supp.3d at 440; 28 C.F.R. §§ 35.134.

51.    To establish a claim for retaliation, Plaintiff must prove: "(1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the

employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

**A.    Plaintiff engaged in a "protected activity" pursuant to the ADA when she requested the Accommodation.**

52.    First, Plaintiff engaged in conduct that readily rises to the level of "protected activities" sufficient to satisfy the ADA.  It is well-recognized that requesting an accommodation for a disability constitutes a "protected activity" pursuant to the ADA.   *Orzech v. Muhlenberg Township*, No. 5:18-cv-03938, 2019 BL 453570, at *6 (E.D. Pa. Nov. 22, 2019) citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190 (3d Cir. 2003) and *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177 , 188 (3d Cir. 2010).

53.    At the outset of Plaintiff's employment, she immediately requested the Accommodation, given the nature of the Condition, and thus engaged in a legally operative "protected activity" pursuant to the ADA.  Further, at that time, Defendant agreed to the Accommodation.  As such, Plaintiff readily satisfied the first prong of her *prima facie* case.

**B.    Plaintiff experienced an "adverse action" after she engaged in a "protected activity" of requesting the Accommodation.**

54.    On or about October 31, 2022, Plaintiff experienced an adverse employment action in that Defendant terminated her employment.

55.    Therefore, Plaintiff suffered an adverse employment action subsequent to her engagement in a "protected activity" in satisfaction of the second prong of her *prima facie* burden.

**C.    A causal connection between Plaintiff's protected activity and the adverse action readily exists.**

56.     A causal connection readily exists between Plaintiff's protected activity and her termination.   At the time of Plaintiff's separation, Defendant made several discriminatory comments which indicated it was not willingness to continue Plaintiff's employment because of her Condition and thus by extension the Accommodation.

57.     Further, the Third Circuit recognizes that, "a plaintiff may rely on the temporal proximity between the two [the protected activity and defendant's adverse action]" to determine causation within a retaliation context.  *Hannis-Miskar v. N. Schuylkill Sch. Dist.*, No. 3:16cv142, 2016 BL 236308, at *6 (M.D. Pa. July 22, 2016) citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015).

58.     Given the close temporal proximity between the time when Plaintiff requested the Accommodation, utilized said Accommodation, and was terminated, a natural and sustainable inference arises that Plaintiff was subjected to a retaliatory termination and discriminatory action.

59.     As delineated more thoroughly above, Plaintiff is entitled to pursue punitive damages for violations of her federally protected rights.  At all times material, Defendant acted with the knowledge that it was unlawful to retaliate against individuals who engaged in various "protected activities" authorized by the ADA.  In terminating Plaintiff in retaliation for her exercise of her statutorily imbued abilities under the ADA, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

60.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment

and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **REQUEST FOR RELIEF**

Plaintiff, Suanne Rankin, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, All Ways Safe, LLC., and prays for relief as follows:

1.    Declare and find that Defendant committed one or more of the following acts:

      i.    Violated the ADA and/or the PHRA in terminating Plaintiff on the basis of her disability;

      ii.    Violated the ADA and/or the PHRA in retaliating against Plaintiff by terminating her because of her engagement in activities protected under the ADA and/or the PHRA;  and

      iii.    Acted with malice and/or reckless indifference to Plaintiff with regard to her federally protected rights under the ADA.

2.    Award compensatory damages to Plaintiff, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3.    Award punitive damages to Plaintiff in an amount to be determined by a factfinder;

4.    Award equitable relief to Plaintiff in form of back pay and front pay;

5.    Award to Plaintiff attorney's fees and costs of suit incurred prosecuting these claims;

6.    Award to Plaintiff pre-judgment and continuing interest as calculated by the Court;

7.      Award to Plaintiff injunctive and other equitable relief as provided by law; and

8.      Award such other and further relief as this Court deems just, equitable, and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: October 23, 2023            By: */s/ Kyle H. Steenland*
                                  Kyle H. Steenland (Pa. I.D. No. 327786)

                                  The Workers' Rights Law Group, LLP
                                  Foster Plaza 10
                                  680 Andersen Drive, Suite 230
                                  Pittsburgh, PA 15220
                                  Telephone: 412.910.9592
                                  Fax: 412.910.7510
                                  kyle@workersrightslawgroup.com

                                  *Counsel for Plaintiff, Suanne Rankin*